UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| 5445 INDIAN CEDAR DR. TRUST, | Case No. 2:22-CV-208 JCM (DJA) |
| Plaintiff(s), | ORDER |
| v. | |
| NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, | |
| Defendant(s). | |

Presently before the court is 5445 Indian Cedar Dr. Trust's (the "Trust") motions for a temporary restraining order (ECF No. 7) and injunctive relief (ECF No. 9). NewRez LLC d/b/a/ Shellpoint Mortgage Servicing ("Shellpoint") filed responses (ECF Nos. 17, 18), to which the Trust replied (ECF No. 20).

**I.      Background**

This matter arises from an impending foreclosure sale of real property located at 5445 Indian Cedar Drive, Las Vegas, NV 89135 (the "property"), set for February 18, 2022, at 9:00 AM. (ECF No. 7-6 at 1). In February of 2013, the Trust purchased the property at a foreclosure sale for $29,000.00. (ECF No. 7-1 at 2). On July 12, 2018, a Nevada state court entered judgment that the deed of trust on the property survived the foreclosure sale. (ECF No. 17-11). On May 11, 2020, the Nevada Court of Appeals affirmed. (ECF No. 17-12).

As a point of relevant background, non-parties Karen and Edward Diaz purchased the property in August 2007 by obtaining a $183,300.00 loan, which the Diazes' lender secured with

**James C. Mahan**
**U.S. District Judge**

a deed of trust recorded against the property. (ECF No. 17-1).[1] The Diazes failed to timely pay back their loan and as a result, a notice of default/election to sell under deed of trust was recorded against the property on April 9, 2010. (ECF No. 17-6). The notice stated the Diazes were delinquent for all payments from January 1, 2010, forward. (*Id.*). Significantly, this notice of default was rescinded through a rescission recorded against the property on May 17, 2010. (ECF No. 17-7).

On October 20, 2021, Shellpoint recorded a second notice of breach and default as well as an election to cause sale of the property under the deed of trust because no payments had been made on the deed of trust since September 1, 2011. (ECF No. 17-8). A notice of trustee's sale was recorded against the property on January 21, 2022, which scheduled a foreclosure sale for February 18, 2022. (ECF No. 17-9).

On January 14, 2022, the Trust brought the instant lawsuit against Shellpoint in Nevada state court asserting claims for quiet title/declaratory relief, slander of title, fraud/misrepresentation, equitable relief—rescission, and unjust enrichment. (ECF No. 1-1). Shellpoint then timely removed the matter to this court on February 3, 2022. (ECF No. 1).

The Trust now seeks a temporary restraining order and preliminary injunction enjoining Shellpoint, its successors, assigns, and agents from selling the property and continuing foreclosure proceedings during the pendency of this case. (ECF Nos. 7, 9).

**II.   Legal Standard**

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order ("TRO") when the movant alleges "specific facts in an affidavit" that immediate and irreparable harm will occur before the adverse party can be heard in opposition. FED. R. CIV. P. 65(b)(1)(A). TROs and preliminary injunctions are extraordinary remedies meant to "preserve the status quo" and "prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). The standard for

---

[1] Ultimately, Shellpoint obtained the deed of trust through an assignment on April 1, 2020. (ECF No. 17-5).

**James C. Mahan**
**U.S. District Judge**

- 2 -

granting a TRO is "substantially identical" to the standard for granting a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

The court considers the following elements in determining whether to grant preliminary injunctive relief: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

The movant must satisfy all four elements; however, "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). This "sliding scale" approach dictates that when the balance of hardships weighs heavily in the movant's favor, he only needs to demonstrate "serious questions going to the merits." *Id.* at 1135.

**III.   Discussion**

Having considered the *Winter* factors, the court DENIES the Trust's motions for a temporary restraining order (ECF No. 7) and preliminary injunction (ECF No. 9).

A.   Likelihood of success on the merits

The Trust has not demonstrated a likelihood of success on the merits. The Trust argues that Shellpoint's deed of trust was "likely extinguished under the operation of law under NRS 106.240" because ten years have passed since the first notice of default recorded in 2010. (ECF No. 7 at 8). NRS 106.240 is Nevada's "ancient lien" statute and provides as follows:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, **shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust** according to the terms thereof or any recorded written extension **thereof become wholly due**, **terminate**, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

*Id.* (emphasis added).

The parties dispute whether the 2010 notice of default accelerated the loan, rendering it "wholly due" and thus triggering the ten-year clock for discharge under the statute. (ECF Nos. 7 at 8; 17 at 4). The Trust concedes that a rescission was recorded after the first notice of default

**James C. Mahan**
**U.S. District Judge**

- 3 -

(*see generally* ECF No. 20), but it contends that the rescission was ineffective and Shellpoint's reliance on it "is misplaced." (*Id.* at 5).

The Trust's position directly contravenes the Nevada Supreme Court and Ninth Circuit. As recently as September of last year, the Nevada Supreme Court held that a notice of rescission "effectively cancel[s] the acceleration" of a loan triggered by a notice of default, thereby resetting NRS 106.240's 10-year clock. *Glass v. Select Portfolio Servicing, Inc.*, No. 78325, 2020 WL 3604042, at *1 (Nev. July 1, 2020) (unpublished) (en banc rehearing denied); *see also SFR Invests. Pool 1, LLC v. U.S. Bank N.A.*, No. 81293, 2021 WL 4238769 (Sept. 16, 2021) (unpublished) (reaffirming *Glass's* holding on the point of rescission).[3]

Last month, the Ninth Circuit similarly held that a recorded notice of rescission renders Nevada's ancient lien statute inapplicable, thereby precluding any extinguishment of a deed of trust under that provision. *TRP Fund VIII, LLC v. NewRez LLC*, 2021 WL 5823701 (9th Cir. 2021) ("Recent decisions of the Nevada Supreme Court confirm our conclusion that the recission notice decelerated the loan and prevented extinguishment of the deed of trust under the ancient lien statute.").

Given the recent, consistent holdings from the Nevada Supreme Court and Ninth Circuit on this precise issue, the court finds that the Trust has not demonstrated a likelihood of success on the merits.

B. Irreparable harm

The Trust contends that it will suffer irreparable harm if the sale is not enjoined because the property is unique real estate that cannot be reclaimed, and money damages would be inadequate. (ECF No. 7 at 8).

---

[2] Importantly, the language of the rescission notices in *Glass* and *SFR Invests.* mirrors the language of the rescission notice in the instant case (*See* ECF No. 17-13; *SFR Invests.*, No. 81293, Doc. No. 21-01882 at 13; and ECF No. 17-7, respectively).

[3] This court may consider the Nevada Supreme Court's unpublished decisions to the extent that they "may lend support to a conclusion as to what the Nevada Supreme Court would hold in a published decision." *U.S. Bank, N.A., v. White Horse Estates Homeowners Ass'n*, 987 F.3d 858, 863 (9th Cir. 2021) (quotations and alterations omitted).

**James C. Mahan**
**U.S. District Judge**

- 4 -

Shellpoint avers—and the Trust does not dispute (*see generally* ECF No. 20)—that the Trust is the landlord of the investment property and will therefore not be irreparably harmed because loss of income or revenue can be redressed through monetary damages. The court agrees with Shellpoint's position.

The Supreme Court has held that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). While it is well-established that the loss of an interest in real property typically constitutes an irreparable harm, *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011), that determination is usually made in the face of probable eviction of plaintiffs. *See, e.g., Collegium Fund, LLC v. Wells Fargo Bank, N.A.*, No. 2:13-cv-01550-GMN-VCF, 2013 WL 6692952, at *3 (D. Nev. Dec. 17, 2013) (denying granting an injunction because, in part, "[p]laintiff's motion lack[ed] any allegation that a current resident of the subject property [would] be evicted if the Court were to deny the requested injunction and allow the foreclosure sale to proceed.").

The Trust has made no such claim here and has failed to persuade the court that its potential injuries could not be compensable through money damages. Accordingly, the court does not find irreparable harm will result without the issuance of an injunction.

C.  Balance of hardships

The Trust asserts that the equities are in its favor because Shellpoint "has sat on their [sic] alleged rights to foreclose for over ten years." (ECF No. 7 at 7). The court is troubled by this argument since the reason the property has not been sold is that it was tied up in extensive quiet title litigation—*initiated by the Trust*—for six of those ten years. And despite the state court's ruling granting the validity of the deed of trust nearly four years ago, the Trust has yet to make a payment pursuant to the deed of trust.

Instead, the Trust continues to tie up the property in litigation. The Trust's arguments border on a bad faith attempt to goad the court into imposing the extraordinary remedy of

**James C. Mahan**
**U.S. District Judge**

- 5 -

injunctive relief on an extreme timeline because the Trust stalled on satisfying its obligations until the risk of its default—foreclosure—was eminently upon it.

At bottom, the Trust stands to lose revenue from a windfall investment that it has refused to pay for despite the state district court's judgment. Meanwhile, if the court grants injunctive relief, Shellpoint risks suffering further losses on the debt obligation that it is owed under the deed of trust.

Accordingly, the court finds that the balance of hardships is not clearly in favor of the Trust.

D. Advancement of the public interest

This court has previously held that:

> Enjoining a valid trustee's sale does not serve the public interest. Lenders and secondary mortgage participants alike cannot be barred from obtaining the value of the collateral for loans made to borrowers by foreclosing upon their interest in the property they financed. The ramifications from such a policy would harm both the residential mortgage and real estate markets. Liquidity in the mortgage market would vanish and financial institutions would sustain significant loss from uncollectible loans. Additionally, a liberal policy in favor of these injunctions could create a perverse incentive for borrowers not to pay their loans if they are aware that any foreclosure proceeding can be enjoined if they simply file suit against their lender.

*Rosenberger v. Wells Fargo Home Mortgage*, No. 2:15-cv-2107-JCM-VCF, 2015 WL 8160360 at *3 (D. Nev. 2015).

The court similarly holds here and does not find that an injunction would advance the public interest on these facts.

In sum, because the Trust has not satisfied all four *Winter* elements of injunctive relief—under the traditional or sliding scale approach, s*ee Cottrell*, 632 F.3d at 1131—the Trust is not entitled to injunctive relief.

. . .

. . .

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Trust's motions for a temporary restraining order (ECF No. 7) and injunctive relief (ECF No. 9) be, and the same hereby are, DENIED.

DATED February 17, 2022.

_____
UNITED STATES DISTRICT JUDGE